United States District Court
Southern District of Texas
**ENTERED**
December 02, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| EMMANUEL AVILA, § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action No. 1:21-cv-056 |
| § | |
| ERIC GARZA, § | |
| SHERIFF OF CAMERON CO., ET AL., § | |
| DEFENDANTS § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of the "Prisoner's Civil Rights Complaint" (hereinafter, "Complaint") filed by pro se Plaintiff Emmanuel Avila. Dkt. No. 1. Defendant Sheriff Eric Garza filed a Motion to Dismiss (hereinafter, Garza's "Motion" or "Motion to Dismiss") on August 18, 2021. Dkt. No. 21. Avila has not filed a response to Garza's Motion. For the reasons provided below, it is recommended that the Court **GRANT** Garza's Motion, **DISMISS** Avila's claims against him with prejudice, and **DIRECT** the Clerk of Court to **CLOSE** this case.[1]

**I. Jurisdiction and Venue**

The Court has federal question subject matter jurisdiction because Avila has attempted to allege violations of 42 U.S.C. § 1983. *See* Dkt. No. 1 at 1-4; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Venue is also proper in this District

---

[1] The undersigned has issued Report and Recommendations recommending the dismissal of all other Defendants in this lawsuit. *See* Dkt. Nos. 26, 27, and 29. Therefore, should the Court adopt these Report and Recommendations, dismissal of this entire lawsuit will be appropriate.

because the alleged events giving rise to Avila's lawsuit occurred here. *See* Dkt. No. 1 at 1-4 (describing events and omissions occurring in Cameron County, Texas); 28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred").

## II. Procedural History

Avila filed his Complaint on April 16, 2021,[2] while in the custody of the Carrizales-Rucker Detention Center ("Carrizales Facility") in Olmito, Texas. Dkt. No. 1 at 1, 6.[3] Avila's Complaint lists as defendants: (1) "Sheriff Cameron County Eric Garza;" (2) "Chief Jailer Fermin Leal;" (3) "Psychiatrist Kenia Walker;" (4) "Psychiatrist Freebird;"[4] (5) "Sgt. Cameron County Jail Emanuel Zepeda;" and, (6) "J. Gracia LVN" (collectively, "Defendants"). Dkt. No. 1 at 3. The gravamen of his Complaint is that, while in the Carrizales Facility, he did not receive the same treatment that he received out "in the world" for his anxiety and depression. Dkt. No. 1 at 4.

On April 29, 2021, the Court issued an Order and Notice. Dkt. No. 6. This Order and Notice informed Avila that his Complaint failed to state a claim and would be dismissed if he did not supplement it with facts in support of his claims by May 24, 2021. *Id.* Avila

---

[2] Avila does not specify when he placed his Complaint in the prison mailing system. Dkt. No. 1 at 6. However, as it appears he signed his Complaint on April 16, 2021, the Court will consider it filed on that date. *See Houston v. Lack*, 487 U.S. 266 (1988) (establishing "mailbox" rule that a prisoner's document is deemed filed at the time of delivery to prison authorities for forwarding to the court); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995) (finding that mailbox rule applies to § 1983 cases).

[3] Avila has since advised the Court that he has been transferred to the Joe Kegans Intermediate Sanction Facility in Houston, Texas. Dkt. No. 16.

[4] As no Defendant "Freebird" has made an appearance in this lawsuit, but a Defendant "Freeberg" has, the Court will presume that Avila intended to sue Freeberg. When summarizing Avila's allegations, the Court will use the correct spelling of Defendant Freeberg's name.

responded to this Order and Notice by filing a "Memorandum" in support of his Complaint. Dkt. No. 10. His Memorandum repeats the allegations contained in his Complaint, but it also states that, while in the Carrizales Facility, Defendant Emanuel Zepeda retaliated against him for seeking mental health treatment. *Id.* at 2. Specifically, he states that Zepeda retaliated "by sending guards into the dorm to ransake under the guise of shaking down because he's trying to make an example of my crying self, so other inmates will get mad at me and take retellitory action." *Id.* (errors in original).

Defendant Eric Garza filed his instant Motion to Dismiss on August 18, 2021. Dkt. No. 21. Garza contends that Avila's claims against him fail to state a claim for relief. *Id.* at 4-8. Garza additionally argues that Avila's claims should be dismissed because he has qualified immunity. *Id.* at 8-10. Avila has not responded to Garza's Motion to Dismiss.

### III. Legal Standards

**A. FED. R. CIV. P. 12(b)(6).** Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a). *Richter v. Nationstar Mortgage, LLC*, Civil Action No. H–17–2021, 2017 WL 4155477, at *1 (S.D. Tex., 2017). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory[.]" *Id.*

at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* Although the Supreme Court in *Twombly* stressed that it did not impose a probability standard at the pleading stage, an allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

**B. Local Rule 7.4**. Local Rule 7.4 provides that a party's failure to respond to a motion "will be taken as a representation of no opposition." *See* Rule 7.4 of the Local Rules of the United States District Court for the Southern District of Texas. *See also* Rule 6(C), Civil Procedures of Judge Rolando Olvera ("Failure to respond to an opposed motion will be taken as a representation of no opposition."). Nevertheless, a district court may not grant a motion to dismiss simply because the plaintiff has failed to respond. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012); *Guidry v. Wells Fargo Bank, N.A.,* No. CV H-16-2618, 2017 WL 58845, at *1 (S.D. Tex. Jan.

4, 2017). The court must still assess the legal sufficiency of the plaintiff's claims to determine if dismissal is warranted. *Id.*

**C. 42 U.S.C. § 1983**. Section 1983 of Title 42 does not grant substantive rights. Instead, it provides a vehicle for a plaintiff to vindicate those rights that are protected by the United States Constitution and other federal laws. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Specifically, § 1983 provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law. *Id.* at 315. A plaintiff seeking § 1983 relief must show: (1) that the conduct complained of was committed under color of state law, and (2) that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)).

**D. The Constitutional Prohibition Against Cruel and Unusual Punishment.** The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. This provision applies to the States through the Fourteenth Amendment. *Roper v. Simmons*, 543 U.S. 551, 560 (2005). Still, although the Eighth Amendment applies to § 1983 claims brought by convicted prisoners, it does not apply to § 1983 claims brought by pretrial detainees. *See Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Pretrial detainees have the same rights as convicted prisoners to "constitutional essentials like medical care and safety," but those rights emanate from the Fourteenth Amendment's due process guarantees, not the Eighth Amendment guarantee against the infliction of cruel and unusual punishment. *Jacobs*, 228 F.3d 388, 393.

The standards applicable to a pretrial detainee under the Fourteenth Amendment are "the same as that for a prisoner under the Eighth Amendment." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019); *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020) (same).

> [W]e hold (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650. Further, for liability to attach, the government official must be aware of facts allowing him to draw an inference that a substantial risk of serious harm exists, "and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The risk of serious harm alleged by the plaintiff must be serious from an objective point of view. *Id.* at 834. The question of whether an official had the requisite knowledge is a question of fact. *Id.* at 837. "It is subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Fourteenth Amendment § 1983 claims brought by pretrial detainees may be asserted as "conditions of confinement" claims, or as "episodic act or omissions" claims. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d 633, 644–45). In general, conditions-of-confinement claims challenge the restrictions and impositions placed on an inmate, such as the those caused by overcrowding, extreme temperatures, or deprivations of phone or mail privileges. *Garza v. City of Donna*, 922 F.3d 626, 633-34. Conversely, episodic acts or omissions claims challenge the application of a policy or custom

by a jail official in a particular instance. *Estate of Henson v. Wichita County*, 795 F.3d 456, 466–67 (5th Cir. 2015).

When asserting a § 1983 claim, a plaintiff may assert the claim against a defendant in his official capacity, his individual capacity, or both. *See, e.g., Lane v. Franks*, 573 U.S. 228, 234 (2014) ("Lane sued Franks in his individual and official capacities under 42 U.S.C. § 1983"); *Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 752 (W.D. La. 2017) ("In § 1983 suits, government officials may be sued in either their individual or official capacities."). If a plaintiff asserts an official capacity claim, then he must satisfy the *Monell* test. *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 694 (1978)). Under *Monell*, claims against government agents or officers in their official capacities are, in essence, claims against the governmental entity itself. *Monell*, 436 U.S. 658, 694. To prevail against a municipality under *Monell*, a plaintiff bringing an episodic-act-or-omission claim must show: "'(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'" *Garza v. City of Donna*, 922 F.3d 626, 633 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)); *Feliz v. El Paso Cty.*, No. EP-19-CV-277-KC, 2020 WL 1081612, at *3-4 (W.D. Tex. Feb. 27, 2020) (same).

## IV. Avila's Allegations

Avila's Complaint and Memorandum primarily claim that: (1) Defendants failed to provide him with adequate medical care; and (2) Defendant Zepeda retaliated against him

for complaining about this alleged lack of medical care. More specifically, Avila alleges as follows:

1. He suffers from anxiety and depression. He informed "J. Gracia LVN" of this during the intake process. J. Gracia did not refer him to a specialist, but instead told him to fill out a "'sick-call request.'" Dkt. No. 1 at 4; Dkt. No. 10 at 1.

2. He did as J. Gracia instructed numerous times and was seen by a psychiatrist from Texas Tropical Services. Dkt. No. 1 at 4. This psychiatrist, Defendant Kenia Walker, stated that she knew about his conditions and history. Despite this knowledge, she "ignored" his "mental issues[.]" Dkt. No. 10 at 1. She told him that he would be okay and directed him to exercise and get a routine. *Id*. She also prescribed Remeron and refused his request for the "proper medicine" that he "used to be prescribed in the world." Dkt. No. 1 at 4; Dkt. No. 10 at 1.[5]

3. Remeron makes him sleepy, depressed, and anxious. It also causes him to "zombie-out" and have terrible "lows and highs." Dkt. No. 10 at 1. He has complained about this to Defendant Freeberg and Defendant Emanuel Zepeda. When he complains, he is talked down to and told that he is not at the Holiday Inn. Defendant Freeberg tells him that he is lucky to get any treatment at all and Defendant Zepeda tries to make everything a joking matter. Dkt. No. 1 at 4. Zepeda also provides him with "smart" responses or says that he has enough to do without worrying about his "psyche meds." *Id*; Dkt. No. 10 at 1. Once, Zepeda told him that there are many people with more serious troubles who do not break the law; therefore, if he had a problem, he should stay out of jail. Dkt. No. 10 at 1.

---

[5] In his Memo, Avila states that Walker prescribed "Rimeron." Dkt. No. 10 at 1. As there is no drug called Rimeron, and there is one called Remeron, the Court believes that Walker prescribed Remeron, which is "a prescription medicine used to treat the symptoms of depression." *See* https://www.rxlist.com/remeron-drug.htm (last visited November 24, 2021).

4. He sends in "sick calls" and grievances but gets no response. Dkt. No. 10 at 1. When he does get a reply, he is told that his issue is not a "grievable issue." *Id.* When he asks Zepeda for help, Zepeda threatens retaliation.

> When I ask Sgt. Zepeda he says, Quit crying and get away from the windows. He also retaliates by sending guards into the dorm to ransake under the guise of shaking down because he's trying to make an example of my crying self, so other inmates will get mad at me and take retellitory action.

*Id.* (errors in original).

5. He wants to be compensated in the amount of $150,000 for enduring "mental punishment," loss of appetite, confusion, paranoia, and anxiety. Dkt. No. 1 at 4; Dkt. No. 10 at 1. He wants to be treated humanely. He wants injunctive relief requiring Defendants to provide better care, and he wants them to obtain sensitivity and ethics training. *Id.*

## V. Discussion

Avila does not specify: (1) whether he is a convicted prisoner or a pretrial detainee;[6] (2) whether he is suing Defendants in their individual or official capacities; or (3) whether he is asserting episodic act or omissions claims, or conditions-of-confinement claims.[7] Avila also fails to identify the constitutional provision(s) allegedly violated by Defendants. *See generally* Dkt. Nos. 1 and 10. For purposes of his claims against Garza, however, his failure to be more specific is immaterial. Regardless of whether he is a convicted prisoner alleging a violation of the Eighth Amendment, or a pretrial detainee alleging a violation of the Fourteenth Amendment, he has failed to state a claim for relief.

---

[6] Defendants do not classify Avila as a pretrial detainee or a convicted prisoner. Still, they indicate that he was a pretrial detainee while at the Carrizales Facility because they construe his claims as Fourteenth Amendment claims rather than Eighth Amendment claims. *See* Dkt. Nos. 21-25.

[7] Despite his failure to specify, Avila's claims against Garza are most correctly classified as episodic act and omission claims, rather than conditions-of-confinement claims. *See Supra* at p. 6 (distinguishing episodic act and omission claims from conditions-of-confinement claims).

Avila's Complaint fails to state a claim for relief against Defendant Garza because it is limited to one conclusory half-sentence accusing Garza of failing to adequately supervise Defendants. *See* Dkt. No. 1 at 3. (stating that Garza "inadequately supervis[ed]" Defendants and failed to "make sure county jail policies were adhered" to). Avila's Memorandum does not elaborate upon this half-sentence because it contains *no* allegations against Garza. Dkt. No. 10. To state a claim against Garza for failing to adequately supervise Defendants, Avila must first state a claim against those Defendants for violating at least one of his constitutional rights. Avila has not done so. *See* Dkt. Nos. 26, 27, 29 (finding that Avila has failed to state a claim against Defendants Walker, Freeberg, Leal, Gracia, and Zepeda). Thus, because Avila has failed to state a claim against Garza, his lawsuit against Garza should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. Rule 12(b)(1) (allowing for the dismissal of a claim if the plaintiff fails "to state a claim upon which relief can be granted.").

Avila's failure to state a claim for the violation of any constitutional right also renders his lawsuit against Garza subject to dismissal on qualified immunity grounds. To the extent that Avila intended to bring suit against Garza in his individual capacity, Garza asserts that he is entitled to qualified immunity. Dkt. No. 21 at 8-10.[8] Once a defendant has pled their entitlement to qualified immunity, the "burden of negating the defense lies with the plaintiff." *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994); *Sauceda v. City of San Benito, Texas*, No. 1:17-CV-135, 2019 WL 4673559, at *6 (S.D. Tex. Sept. 25, 2019) (same). A plaintiff may negate a defendant's claim to qualified immunity by showing (1) the

---

[8] Qualified immunity is a form of immunity available to defendants sued in their individual, rather than official, capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-467 (5th Cir. 1999). Qualified immunity is an affirmative defense that is properly raised under Rule 12(b)(6) or Rule 56. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, (1982). It is not jurisdictional and cannot constitute grounds for dismissal under Rule 12(b)(1). *Id.*

defendant violated a clearly established constitutional right and (2) the defendant's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995) (citing *Siegert v. Gilley*, 500 U.S. 226, 232-34 (1992)); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428; *Sauceda v. City of San Benito, Texas*, No. 1:17-CV-135, 2019 WL 4673559, at *6. Avila has not stated a claim for the violation of any constitutional right. Therefore, to the extent that he intended to sue Garza in his individual capacity, his claims are also subject to dismissal pursuant to Rule 12(b)(6). *See id.*

Finally, to the extent that Avila intended to bring suit against Garza in his official capacity, he has failed to satisfy the *Monell* test. *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, (citing *Monell*, 436 U.S. 658, 694). Under *Monell*, claims against government agents or officers in their official capacities are, in essence, claims against the governmental entity itself. *Monell*, 436 U.S. 658, 694. A plaintiff may hold a municipality liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id*; *Truong v. Alief Indep. Sch. Dist.*, No. CV H-16-00427, 2016 WL 6680930, at *3 (S.D. Tex. Nov. 14, 2016) (same).

To assert a claim against a municipality under § 1983 that satisfies *Monell,* a plaintiff must show: (1) that a policymaker acted on behalf of the municipality; (2) that the action constituted an official "policy or custom[;]" and, (3) that the policy or custom was the "moving force" that caused a violation of the plaintiff's rights. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167-71 (5th Cir. 2010) (citations omitted). A plaintiff may satisfy the "policy or custom" requirement with proof of: (1) an ordinance, policy statement, regulation or decision that is officially adopted and promulgated by the municipalities' "lawmaking officers or by an official delegated policy-making authority;" or (2) "a persistent,

widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam); *Truong v. Alief Indep. Sch. Dist.*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same). If a plaintiff attempts to use the actions of a municipalities' employees to prove a "custom," the employees' actions "must have occurred for so long or so frequently that the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [district] employees." *G.M. ex rel. Lopez v. Shelton*, 595 F. App'x 262, 265 (5th Cir. 2014) (citing *Webster v. City of Hous.*, 735 F.2d 838, 841); *Smith v. Houston Indep. Sch. Dist.*, No. CV H-18-2938, 2018 WL 5776936, at *2 (S.D. Tex. Nov. 2, 2018) (same). Allegations describing the target custom or policy and its relationship to an underlying constitutional violation must set out specific facts and cannot be conclusory. *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997)); *Truong*, 2016 WL 6680930, at *3 (same).

Avila has not identified a policy or custom constituting the moving force behind the alleged violation of his constitutional rights. That is, he has not identified: (1) an ordinance, policy statement, regulation or decision that is officially adopted and promulgated by the municipalities' "lawmaking officers or by an official delegated policy-making authority;" or (2) "a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d 838, 841; *Truong*, 2016 WL 6680930, at *3 (same). To the extent that Avila intended to sue Garza in his official capacity, then, his claims should be dismissed with prejudice.

## VI.  Recommendation

For the foregoing reasons, it is recommended that the Court **GRANT** Garza's Motion to Dismiss (Dkt. No. 21), **DISMISS** Avila's claims against him with prejudice, and **DIRECT** the Clerk of Court to **CLOSE** this case.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **2nd** day of **December, 2021**, at Brownsville, Texas.

_____
Ignacio Torteya, III
United States Magistrate Judge